**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| DIETGOAL INNOVATIONS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>WEGMANS FOOD MARKETS, INC.,<br><br>    *Defendant.* | Civil Action No. 2:13-cv-00154-RAJ-TEM<br>(Consolidated)<br>**LEAD CASE** |

**PLAINTIFF DIETGOAL INNOVATIONS LLC'S OPPOSITION
TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON
THE PLEADINGS BASED ON COLLATERAL ESTOPPEL**

Steven War (VSB #45048)
**MCNEELY, HARE & WAR LLP**
5335 Wisconsin Ave, N.W., Suite 440
Washington, DC  20015
Telephone:    (202) 536-5877
Facsimile:    (202) 478-1813

Christopher M. Joe (*Pro Hac Vice*)
Eric W. Buether (*Pro Hac Vice*)
Niky Bukovcan (*Pro Hac Vice*)
**BUETHER JOE & CARPENTER, LLC**
1700 Pacific Avenue, Suite 4750
Dallas, Texas 75201
Telephone:    (214) 635-1839

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 2

    A. The Court Should Not Automatically Accept Defendants' Request to Give the *Bravo* Decision Collateral Estoppel Effect ......................................................... 2

    B. The Supreme Court Jurisprudence Regarding Abstract Ideas ................................ 3

    C. DietGoal was Deprived of a Fair Opportunity to Defend the Validity of the `516 Patent in the Bravo Case ................................................................................. 5

    D. The Court Should Enter a Stay of This Litigation Pending the Outcome of DietGoal's Appeal of the Bravo Decision ............................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
　　573 U.S. __ (June 19, 2014) ................................................................................3, 4, 5

*Bilski* v. *Kappos*,
　　561 U. S. 593 (2010) .............................................................................................4, 5

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
　　402 U.S. 313 (1971) ...............................................................................................2, 3

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
　　717 F.3d 1269 (Fed. Cir. 2013) ..................................................................................4

*Diamond v. Diehr*,
　　450 U.S. 175 (1981) .....................................................................................................5

*DietGoal Innovations LLC v. Bravo Media LLC (Div. of NBC Universal Media, LLC)*,
　　2014 U.S. Dist. LEXIS 92484 (S.D.N.Y. July 8, 2014) ............................................. passim

*DietGoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*,
　　2014 U.S. Dist. LEXIS 19047 (E.D. Tex. Feb. 13, 2014) ...........................................9

*DietGoal Innovations LLC v. Time, Inc.*,
　　2014 U.S. Dist. LEXIS 91120 (S.D.N.Y. June 30, 2014) ...........................................9

*Eisel v. Columbia Packing Co.*,
　　181 F. Supp. 298 (D. Mass. 1960) ..............................................................................3

*Gottschalk* v. *Benson*,
　　409 U.S. 63 (1972) ......................................................................................................7

*Graham v. John Deere Co.*,
　　383 U.S. 1 (1966) ........................................................................................................3

*JuxtaComm-Texas Software, LLC, v. Lanier Parking Systems of Virginia, Inc., et al.*,
　　944 F. Supp. 2d 469 (E.D. Va. 2013) .......................................................................10

*Landis v. N. Am. Co.*,
　　299 U.S. 248 (1936) .................................................................................................10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
　　132 S. Ct. 1289 (2012) ............................................................................................4, 5

*Molinaro v. Fannon/Courier Corp.*,
    745 F.2d 651 (Fed. Cir. 1984)...................................................................................................3

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012)..................................................................................................4

*Novo Nordisk, Inc., v. Paddock Labs, Inc.*,
    797 F. Supp. 2d 926 (D. Minn. 2011) ......................................................................................10

*Parker v. Flook*,
    437 U.S. 584 (1978)...................................................................................................................7

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999)..................................................................................................2

*Sampson v. Ampex Corp.*,
    478 F.2d 339 (2d Cir. 1973)...................................................................................................2, 3

*Stevenson v. Sears, Roebuck & Co.*,
    713 F.2d 705 (Fed. Cir. 1983)................................................................................................2, 3

*Triplett v. Lowell*,
    297 U.S. 638, 56 S. Ct. 645, 80 L. Ed. 949 (1936)....................................................................2

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013)..................................................................................................4

**Statutes**

35 U.S.C. § 101............................................................................................................................1

Plaintiff DietGoal Innovations LLC ("DietGoal") files this Opposition to Defendants Dunkin' Brands Group, Inc. ("Dunkin' Brands"), Wegmans Food Markets, Inc. ("Wegmans"), Domino's Pizza, Inc. ("Domino's"), and General Mills Sales, Inc.'s ("General Mills"), (collectively, "Defendants") Joint Motion for Judgment on the Pleadings Based on Collateral Estoppel (Dkt No. 118).

## I. INTRODUCTION

Defendants request the Court to enter a judgment of invalidity of the `516 Patent based upon the doctrine of collateral estoppel in view of the July 8, 2014 decision by Judge Engelmayer of the Southern District of New York granting summary judgment that the claims of the `516 Patent are invalid as claiming unpatentable subject matter pursuant to 35 U.S.C. § 101. *See DietGoal Innovations LLC v. Bravo Media LLC (Div. of NBC Universal Media, LLC)*, 2014 U.S. Dist. LEXIS 92484 (S.D.N.Y. July 8, 2014) (the "*Bravo* decision"). As set forth below, the *Bravo* decision's analysis of the patent-eligibility of the claims of the `516 Patent is fundamentally flawed and demonstrates that DietGoal did not have a fair opportunity procedurally, substantively, and evidentially to defend the validity of the `516 Patent in that court, precluding application of the doctrine of collateral estoppel. DietGoal has appealed the *Bravo* decision to the Federal Circuit.[1] DietGoal proposes that this Court stay the litigation pending before it dealing with the `516 Patent until DietGoal's appeal of the *Bravo* decision is resolved. This will avoid the necessity of the Court to conduct further proceedings regarding whether the *Bravo* decision is so flawed that it is not entitled to collateral estoppel effect while allowing the Court and the parties to avoid further proceedings until the Federal Circuit renders its decision on the appeal of the *Bravo* decision.

---

[1] DietGoal filed its Notice of Appeal in the *Bravo* case on July 10, 2014.

## II.     ARGUMENT

**A.     The Court Should Not Automatically Accept Defendants' Request to Give the *Bravo* Decision Collateral Estoppel Effect**

DietGoal respectfully submits that, even though the *Bravo* decision involves the same plaintiff and the same patent as in this case, collateral estoppel may not be applied automatically to this case warranting the entry of a judgment of invalidity of the `516 Patent.[2] As the one court declared:

> Since *Triplett v. Lowell*, 297 U.S. 638, 56 S. Ct. 645, 80 L. Ed. 949 (1936), it had been the rule that a determination of patent invalidity did not act as *res judicata* in a subsequent suit involving the patentee and a different defendant. This rule, however, was overturned by *Blonder-Tongue*, which abandoned the traditional absolute reliance upon mutuality in such situations.  But while the *Blonder-Tongue* court did make the plea of estoppel available to a defendant in subsequent patent litigation, it noted that **the plea need not "automatically be accepted** once the defendant in support of his plea identifies the issue in suit as the identical [issue] finally decided against the patentee or one of his privies in previous litigation." 402 U.S. at 333, 91 S. Ct. at 1445.  Rather, the question, as in the traditional estoppel situation, is whether the patentee had both fair opportunity and incentive to litigate the validity issue in the first litigation.

*Sampson v. Ampex Corp.*, 478 F.2d 339, 341 (2d Cir. 1973) (quoting and citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971) (emphasis added).[3]

In *Blonder-Tongue*, the Supreme Court held that a prior determination of patent invalidity may be asserted as a defense to a subsequent attempt to enforce the patent, and that this defense should be accepted by a court unless the patentee demonstrates that he was denied a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful action.  Thus, *Blonder-Tongue* establishes that a judgment of invalidity has no collateral estoppel effect if the patentee

---

[2]  A copy of the `516 Patent is attached as Exhibit A.

[3]  As a technical matter, the Federal Circuit has held that, whether a patentee is collaterally estopped from contesting the validity of his or her patent is governed by Federal Circuit law. *See, e.g., Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379-80 (Fed. Cir. 1999); *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983).

can show that she did not have a full and fair opportunity to litigate.  As the Supreme Court put it, **a "patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time**.'"  *Id*. at 333 (emphasis added) (quoting *Eisel v. Columbia Packing Co.*, 181 F. Supp. 298, 301 (D. Mass. 1960)).

The Court recognized that "determining whether a patentee has had a full and fair chance to litigate . . . in an earlier case is of necessity **not a simple matter**."  *Id*. at 333 (emphasis added).  The Court, however, listed some factors to be considered:  (1) whether the patentee was the plaintiff in the prior suit and chose to litigate at that time and place; (2) whether the patentee was prepared to litigate and to litigate to the finish against the defendant there involved; (3) if the issue is obviousness, whether the first validity determination purported to employ the standards announced in *Graham v. John Deere Co.*, [citation omitted]; (4) whether the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit; and (5) whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation.  *Id*. at 332-33.  *See also Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983); *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984) ("The burden was upon Catanzaro to establish that the decisions in the earlier litigation were "seriously defective.")  In the end, the Court observed, no single "automatic formula" was seen applicable, and the final decision on whether to apply the estoppel doctrine was left to the lower court's "sense of justice and equity."  *Id*. at 334.  *See also Sampson v. Ampex Corp.*, 478 F.2d at 341.

**B.**     **The Supreme Court Jurisprudence Regarding Abstract Ideas**

The Supreme Court decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. __ (June 19, 2014), is the last in a long line of recent Supreme Court decisions that have grappled with the

3

issue of whether a patent claim improperly claims an abstract idea. As the Federal Circuit observed in *Ultramercial*, "[m]embers of both the Supreme Court and this court have recognized the difficulty of providing a precise formula or definition for the abstract concept of abstractness." *Ultramercial v. Hulu,* 722 F.3d 1335, 1343 (Fed. Cir. 2013). *See also MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("When it comes to explaining what is to be understood by 'abstract ideas' in terms that are something less than abstract, courts have been less successful."). This is largely attributable to the fact that, as the Supreme Court recognized, "all inventions at some level embody, use, reflect, rest upon or apply . . . abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "Any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1298 (Fed. Cir. 2013). As a result, anytime a court begins its analysis by looking for an abstract idea, it is surely going to find one. But pursuing that approach to its logical end would "eviscerate patent law." *Mayo*, 132 S. Ct. at 1293. *Alice* confirmed this concern. 2014 U.S. Lexis 4303 at *15 ("we tread carefully in construing this exclusionary principle lest it swallow all of patent law").

Unfortunately, the *Alice* court declined to provide a precise definition of "abstract ideas," stating that, in the case before it, "we need not labor to delimit the precise contours of the 'abstract ideas' category." 2014 U.S. Lexis 4303 at *21. The Court in *Alice*, in addressing the abstract idea exception, emphasized that "the concern that drives" the implicit exception that laws of nature, natural phenomena, and abstract ideas are not patentable is "one of pre-emption." Id. at *14 (citing *Bilski* v. *Kappos*, 561 U. S. 593, 611–612 (2010) (upholding the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea").

4

Importantly, the *Alice* Court reiterated its jurisprudence that an application of an abstract idea can be patentable. The Court in *Alice* reiterated the two-step framework established in *Mayo* for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim **patent-eligible applications of those concepts**." 2014 U.S. Lexis 4303 at 16 (emphasis added).[4] "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, '[w]hat else is there in the claims before us?'" *Id.* (citations omitted). "To answer that question," the *Alice* Court emphasized, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application." *Id.* (citations omitted). Thus, the determination of patent-eligibility must be conducted on a claim-by-claim basis, and must consider the elements of each claim in this manner.

C. **DietGoal was Deprived of a Fair Opportunity to Defend the Validity of the `516 Patent in the *Bravo* Case**

A review of the *Bravo* decision reveals that DietGoal was denied a fair opportunity to defend the validity of the `516 Patent. Specifically, the *Bravo* decision revels that the judge in that case (1) failed to apply the applicable legal principles governing whether claims are drawn to patent-eligible subject matter; (2) failed to construe any of the claims or otherwise grasp the

---

[4] *See also Mayo*, 132 S. Ct. at 1294 (explaining that the fact that a claim uses a basic tool does not mean it is not eligible for patenting). Instead, a claim is not patent eligible only if, instead of claiming an application of an abstract idea, the claim is instead to the abstract idea itself. *See also Bilski*, 130 S. Ct. at 3230 ("[W]hile an abstract idea, law of nature, or mathematical formula could not be patented, an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." (emphasis in original) (internal quotation marks omitted)); *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) ("It is now commonplace that an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.").

actual scope of the claims declared invalid; and (3) made critical findings of fact without any evidentiary basis in the record.

For example, although the court in *Bravo* acknowledged that the Supreme Court in *Alice* made clear that "'the concern that drives this exclusionary principle [i]s one of pre-emption,'" *Bravo* decision at 8, the *Bravo* court completely failed to explain in any manner how the individual claims of the `516 Patent preempt any abstract idea. Indeed, the `516 Patent itself cites as prior art U.S. Patent No. 5,454,721 issued to Kuch which discloses a computerized method for choosing meals. Although the PTO found the claims of the `516 Patent distinguishable over the Kuch patent, the scope of the `516 Patent claims must be narrower than the invention disclosed in the Kuch patent; otherwise the `516 Patent claims could not be issued in view of the Kuch patent. Therefore, the claims of the `516 Patent cannot preempt the abstract idea of meal planning.

Furthermore, the *Bravo* court failed to conduct any construction of any of the language of the 62 claims contained in the `516 Patent. *Bravo* decision at 28-29. Although the *Bravo* court attempted to explain this failure away by asserting that the claims of the '516 Patent "are sufficiently 'straightforward' that formal claim construction is not necessary to understand their content," *Bravo* decision at 28, the *Bravo* court repeatedly misstated the scope of the claims, contending that they are far broader than the limitations in those claims clearly specifies. This flawed approach was foreshadowed by the statement by the judge in the *Bravo* case during the summary judgment hearing that he was "looking at this as a holistic patent with a variety of different claims or metes and bounds," and that he believed it was proper to "address[] the issue of patentability by looking at the totality of the invention that DietGoal intends to patent as opposed to having to undertake one by one this analysis as to 61 or whatever different claims." *See* Exhibit B at 55 (excerpt from transcript of summary judgment hearing).

6

For example, Judge Engelmayer states that the "'516 Patent claims a process for computerized meal planning; in essence, it recites a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display." *Bravo* decision at 17-18. This description ignores the "Picture Menus" limitation of the `516 Patent. In addition, the claims of the `516 Patent do not merely require the user to "create meals from a database of food objects according to his or her preferences and dietary goals," as the *Bravo* decision asserts. *Bravo* decision at 18. Rather, the claims require that the user be able to select a meal from the Picture Menus, which displays meals from the Database and, using a Meal Builder, change the content of meals and view the resulting meals' impact on the user's customized eating goals.

The *Bravo* decision further asserted that "the claims of the `516 Patent recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences." "Selecting meals for the day," however, is not an element of any claim of the `516 Patent. Also, the `516 Patent does not require that the user select meals "according to [their] food preferences." Rather, the claims of the `516 Patent require a "Picture Menus," which displays on the User Interface meals from the database that a user can select from to meet customized eating goals" *See, e.g.* Claim 1. "Customized eating goals" has been construed to mean "computer implemented, user-specific dietary objectives," which encompasses more than simply "food preferences."

The *Bravo* decision also asserts that, "like the claims invalidated in *Gottschalk v. Benson*, 409 U.S. 63 (1972) and *Parker v. Flook*, 437 U.S. 584 (1978), the claims of the `516 Patent recite steps that, although computer-implemented by virtue of the patent application, could 'be performed in the human mind, or by a human using a pen and paper,' and 'a method that can be

7

performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101.'" *Bravo* decision at 18. The *Bravo* decision, however, does not cite any evidence to support this conclusion, and such an unsupported conclusion is contradicted by the `516 Patent itself. The `516 Patent recites numerous elements that cannot "be performed in the human mind, or by a human using a pen and paper." For example, Claim 1 requires "at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goals." Claim 20 requires "The system of claim 19, wherein a meal is removed or added to the display on the User Interface based on the command [identifying a food object or a meal that the user likes of dislikes]." Claim 23 requires "The system of claim 1, wherein the user can select one or more of the displayed meals to store in the Database." Claim 30 requires "the system of claim 29, wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals." Each claim in the examples above contains limitations that cannot simply be performed by a person using a pen and paper.

The *Bravo* decision also states that "the `516 Patent claims a computerized method of selecting meals that align with the user's individual preferences and nutritional goals (for example, by planning out dinners for the week that accord with a low-calorie diet) and calculating the dietary impact of the addition or subtraction of certain foods (for example, by determining how many calories you will save by swapping out French fries for broccoli). These are conventional and quotidian tasks. A person can perform them without the aid of any particular or structured method and without the need of any technology." *Bravo* decision at 19. An examination of the `516 Patent, however, reveals that "planning out dinners for the week that accord with a low-calorie diet," and "calculating the dietary impact of the addition or subtraction of certain foods" are not claimed by any of the claims of the `516 Patent. Moreover, the *Bravo*

8

court again does not cite any evidence that the actual limitations of the claims such as the "Picture Menus" or the "Meal Builder" are "conventional and quotidian tasks." Indeed, there is **nothing** in the *Bravo* decision indicating that these or other material limitations in the claims have been routinely performed by general purpose computers. The *Bravo* decision merely sets for that court's *ipse dixit* conclusion that these limitations are "purely conventional." *Bravo* decision at 24.

Underscoring the *Bravo* court's complete failure to comprehend the meaning and scope of the claims of the `516 Patent is the statement in the *Bravo* decision that the Picture Menus limitation "is nothing more than 'post-solution activity' that cannot render the process patentable.'" *Bravo* decision at 25-26. The "Picture Menus" limitation has been construed by two other courts in *DietGoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 19047 at *11 (E.D. Tex. Feb. 13, 2014) and *DietGoal Innovations LLC v. Time, Inc.*, 2014 U.S. Dist. LEXIS 91120 (S.D.N.Y. June 30, 2014). The *Kellan* Court construed "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from." The *Time* Court construed "Picture Menus" to mean "a visual display on the User Interface of at least one image of a meal from the Database." These claim limitations are central to the solution offered by the `516 Patent of providing **visual techniques** for training individuals to modify dietary behavior. *See* `516 Patent, Abstract and Col. 1:8-10 (emphasis added). Indeed, a defendant in the related Texas DietGoal litigation acknowledged that "[o]ne crucial aspect of the alleged invention is the user's ability to visualize the food items by viewing pictures of food objects." *See* Exhibit C. The *Bravo* court's statement that the Picture Menus limitation

9

reflects merely post-solution activity reflects a complete misunderstanding of the scope of the claims and the technology underlying the `516 Patent.[5]

**D.     The Court Should Enter a Stay of This Litigation Pending the Outcome of DietGoal's Appeal of the *Bravo* Decision**

These are but examples of the numerous and fundamental flaws in the *Bravo* decision demonstrating that DietGoal was denied a fair opportunity to defend the validity of the `516 Patent. DietGoal proposes that the Court, instead of undertaking the burden of analyzing the Bravo decision to determine for itself whether that decision is so flawed that it should be denied collateral estoppel effect, simply stay this litigation pending an outcome of DietGoal's appeal of the decision. The Court has the discretion to enter such a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") Here, the Defendants will not suffer any prejudice from a stay. In addition, if the *Bravo* decision is reversed or vacated on appeal, it will be far more convenient for the Court and the parties if the Court simply lifts the stay and the parties can proceed with the case where it left it.

---

[5] Because the determination of whether DietGoal did not have a fair opportunity to defend the validity of the `516 Patent in the *Bravo* court depends on the specific claims at issue in the `516 Patent and whether the *Bravo* court failed to grasp the scope of those claims or underlying technology, the cases cited by Defendants involving unrelated patents, *JuxtaComm-Texas Software, LLC, v. Lanier Parking Systems of Virginia, Inc., et al.*, 944 F. Supp. 2d 469, 478 (E.D. Va. 2013), and *Novo Nordisk, Inc., v. Paddock Labs, Inc.*, 797 F. Supp. 2d 926, 931 (D. Minn. 2011) are not of any help in making this determination.

Dated: August 8, 2014                                     Respectfully submitted,

**MCNEELY, HARE & WAR LLP**

By:    */s/ Steven War*
Steven War VSB #45048)
Steve@miplaw.com

5335 Wisconsin Ave, N.W.
Suite 440
Washington, DC  20015
Telephone:    (202) 536-5877
Facsimile:       (202) 478-1813

**BUETHER JOE & CARPENTER, LLC**

Christopher M. Joe
*Pro Hac Vice (Pending)*
Chris.Joe@BJCIPLaw.com
Eric W. Buether
*Pro Hac Vice (Pending)*
Eric.Buether@BJCIPLaw.com
Niky Bukovcan
*Pro Hac Vice (Pending)*
Niky.Bukovcan@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:    (214) 635-1839
Facsimile:       (972) 656-0967

**ATTORNEYS FOR PLAINTIFF**
**DIETGOAL INNOVATIONS LLC**

## **CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that on August 8, 2014, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                */s/ Steven War*
                Steven War