**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| DIETGOAL INNOVATIONS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> WEGMANS FOOD MARKETS, INC., <br><br> *Defendant.* | Civil Action No. 2:13-cv-00154-RAJ-TEM <br> (Consolidated) <br> **LEAD CASE** |
| DIETGOAL INNOVATIONS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> DOMINO'S PIZZA, INC., <br><br> *Defendant.* | Civil Action No. 2:13-cv-00430-RAJ-TEM <br> (Consolidated) |

**PLAINTIFF DIETGOAL INNOVATIONS LLC'S RESPONSE TO DEFENDANT DOMINO'S PIZZA, INC.'S MOTION TO DECLARE THIS CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285 AND TO JOIN ADDITIONAL PARTIES TO DEFENDANTS' REQUEST UNDER 35 U.S.C. § 285**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................ 1

II. ARGUMENT ................................................................................................................. 3

    A. The Applicable Legal Standard ............................................................................ 3

    B. DietGoal's Defense of the Validity of the `516 Patent Under Section 101 Was Not Objectively Baseless ............................................................................... 6

    C. DietGoal's Has Not Asserted an Objectively Baseless Infringement Theory Against Dominos ...................................................................................... 11

    D. Domino's "Subjective Bad Faith" Arguments are Frivolous ............................... 16

    E. Domino's Contentions about DietGoal's Venue Positions are Frivolous ............ 21

    F. The *Lumen View* Decision is Inapposite ............................................................. 23

    G. Domino's Belated Request to Add Mitry and Salmon as Parties Should be Rejected ............................................................................................................... 24

III. CONCLUSION ............................................................................................................ 30

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
    2008 U.S. Dist. LEXIS 54615 (S.D.N.Y. July 17, 2008) ...................................................25

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ...........................................................................................................6, 7

*Applied Materials, Inc. v. Multimetrixs, LLC*,
    2009 WL 1457979 (N.D. Cal. May 26, 2009) ....................................................................29

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*,
    402 U.S. 313 (1971) .............................................................................................................10

*Charge Lion, LLC v. Linear Technology Corp.*,
    Civil Action No. 6:12-cv-00769-JDL (E.D. Tex. Aug. 25, 2014) .....................................19

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013) .............................................................................................6

*Cognex Corp. v. Microscan Sys., Inc.*,
    2014 U.S. Dist. LEXIS 91203, 2014 WL 2989975 (S.D.N.Y. June 30, 2014) ...................5

*DietGoal Innovations LLC v. Bravo Media LLC (Division of NBC Univ. Media, LLC)*,
    Civil Action No. 1:13-cv-8391 (S.D.N.Y. July 8, 2014) ..........................................8, 9, 10

*Digitech Image Techs., LLC v. Newegg, Inc.*,
    2013 U.S. Dist. LEXIS 147633 (C.D. Cal. Oct. 11, 2013) ..............................7, 17, 18, 19

*EON Corp. IP Holdings LLC v. Cisco Sys.*,
    2014 U.S. Dist. LEXIS 101923 (N.D. Cal. July 25, 2014) ...........................................4, 15

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
    2014 U.S. Dist. LEXIS 71753 (D. Del. May 27, 2014) ......................................................21

*EON-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) ...........................................................................................18

*Gametek, LLC, v. Zynga*,
    2014 U.S. Dist. LEXIS 122834 (N.D. Cal. Sept. 2, 2014) ........................................5, 7, 15

*GeoTag, Inc. v. Zoosk, Inc.*,
    2014 U.S. Dist. LEXIS 24782 (N.D. Cal. Feb. 26, 2014) ..................................................19

*Hilgraeve Corp. v. Symantec Corp.*,
  265 F.3d 1336 (Fed. Cir. 2001).......................................................................14

*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*,
  581 Fed. Appx. 877 (Fed. Cir. 2014) ...........................................................5, 6

*Hoover Group v. Custom Metalcraft*,
  84 F.3d 1408 (Fed. Cir. 1996).................................................................25, 26

*Intel Corp. v. United States Int'l Trade Comm'n*,
  946 F.2d 821 (Fed.Cir.1991)..........................................................................14

*IPVX Patent Holdings, Inc. v. Voxernet, LLC*,
  2014 U.S. Dist. LEXIS 83860 (N.D. Cal. June 17, 2014) ..............................19

*Kaneka Corporation v. Zhejiang Medicine Co., Ltd.*,
  2014 U.S. Dist. LEXIS 91659 (N.D. Cal. May 23, 2014) ...............................15

*LendingTree, LLC v. Zillow, Inc.*,
  2014 U.S. Dist. LEXIS 146336 (W.D.N.C. Oct. 9, 2014)..................................5

*Lumen View Technology, LLC v. Findthebest.com, Inc.*,
  24 F. Supp. 3d 329 (S.D.N.Y. 2014)........................................................23, 24

*Machinery Corp. of America v. Gullfiber AB*,
  774 F.2d 467 (Fed. Cir. 1985)........................................................27, 28, 29

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012)..........................................................................4

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996).........................................................................11, 12, 13

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011) ....................................................................................6

*MySpace, Inc. v. GraphOn Corp.*,
  672 F.3d 1250 (Fed. Cir. 2012).....................................................................6, 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ...........................................................................3, 4, 5

*Ohio Cellular Products Corp. v. Adams USA, Inc.*,
  175 F.3d 1343, 1349 (Fed. Cir. 1999),
  *rev'd sub nom.*, *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 472 (2000)...............27, 28, 29

*Park-In-Theatres, Inc. v. Perkins*,
   190 F.2d 137 (9th Cir. 1951) ........................................................................4, 5

*Rates Tech., Inc. v. Broadvox Holding Co., LLC*,
   2014 U.S. Dist. LEXIS 142998 (S.D.N.Y. Oct. 7, 2014) ..................................24

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
   627 F.3d 859 (Fed. Cir. 2010)........................................................................10

*SFA Systems. LLC v. 1-800-Flowers.com, Inc.*,
   Civil Action No. 6:09-cv-00340-LED (E.D. Tex July 8, 2014) ..................19, 20

*Site Update Solutions, LLC v. Accor North America, Inc.*,
   Civil Action No. 5:11-cv-03306-PSG (N.D. Cal. May 21, 2013) ....................20

*Small v. Implant Direct Mfg. LLC*,
   2014 U.S. Dist. LEXIS 154468 (S.D.N.Y. Oct. 22, 2014) ...........................5, 15

*Softview LLC v. Apple Inc.*,
   No. 10-389-LPS, 2011 U.S. Dist. LEXIS 140540 (D. Del. Dec. 7, 2011) .......22

*Stevenson v. Sears, Roebuck & Co.*,
   713 F.2d 705 (Fed. Cir. 1983)........................................................................10

*Ulead Systems v. Lex Computer & Management Corp.*,
   151 F. Supp. 2d 1192 (C.D. Cal. 2001) ....................................................29, 30

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013).........................................................................6

*WildTangent, Inc. v. Ultramercial, LLC*,
   134 S. Ct. 2870 (2014).....................................................................................6

## **Statutes**

28 U.S.C. § 1404.................................................................................................21

35 U.S.C. § 101..................................................................................1, 5, 6, 7, 10

35 U.S.C. § 284.................................................................................................20

35 U.S.C. § 285.......................................................................................... *passim*

35 U.S.C. § 299.................................................................................................18

Plaintiff DietGoal Innovations LLC ("DietGoal" or "Plaintiff") files this response to Defendant Domino's Pizza, Inc.'s ("Domino's") Motion to Declare this Case Exceptional Pursuant to 35 U.S.C. § 285 and to Join Additional Parties to Defendants' Request Under 35 U.S.C. § 285 (Dkt No. 149) and supporting brief (Dkt No. 150) (collectively, the "Motion"), filed on December 31, 2014.

## I.     INTRODUCTION

Defendant Domino's seeks to have this case declared "exceptional" under 35 U.S.C. § 285 and an award of attorneys' fees based upon numerous meritless contentions.  Domino's argues that the `516 Patent was so clearly invalid under 35 U.S.C. § 101 as to render DietGoal's arguments supporting the validity of the `516 Patent under 35 U.S.C. § 101.  During the time this case was litigated, however, very little about determining whether a patent fails to claim patentable subject matter – especially with respect to computer-implemented inventions – has been clear.  DietGoal has several, meritorious arguments regarding why the claims of the `516 Patent do not impermissibly preempt the abstract idea of meal planning and claim patentable subject matter.  DietGoal's arguments defending the `516 Patent's validity under Section 101 cannot reasonably be considered objectively baseless.

Domino's also argues that DietGoal asserted an infringement theory contrary to the claim term "customized eating goals," as construed by the Eastern District of Texas.  As an initial matter, Domino's glosses over the fact that this Court did not construe any claim term of the `516 Patent or adopt the Eastern District of Texas' claim construction of "customized eating goals," rendering Domino's argument irrelevant.  Moreover, Domino's misrepresents the Texas court's construction of "customized eating goals" by reading limitations into the claim term that the Texas court expressly refused to do.  In particular, the Texas court refused to add a new limitation requiring "customized eating goals" to be stored by the claimed computer system, and the Texas court's claim construction did not require the customized eating goals to be "accessible

by the computer," as Domino's contends.   In addition, Domino's incorrectly argues that the Texas court held that the computerized implementation of "customized eating goals" cannot involve any mental step.  The Texas court simply stated that "customized eating goals" could not be *solely* within the user's mind or *merely* a mental process, however, the Texas court did not state that the "customized eating goals" could not invoke *any* mental process.   Shortly after DietGoal sued Domino's for infringement of the `516 Patent, it served Domino's with detailed infringement contentions showing precisely how the accused Domino's website infringes the asserted claims of the `516 Patent consistent with the language of those claims and even consistent with the Texas court's subsequent claim construction order.   Accordingly, DietGoal's infringement contentions set forth a reasonable and good faith infringement theory with supporting evidence that preclude an exceptional case finding.

Domino's also falsely asserts that the owners of DietGoal – Messrs. Mitry and Salmon – used another entity – Empire IP, LLC ("Empire IP") – to acquire the `516 Patent and then transfer it to DietGoal to extort "nuisance value settlements" from defendants.  Domino's fails to inform the Court that Empire IP had nothing to do with the creation of DietGoal or the acquisition of the `516 Patent and, in fact, did not even exist at the time DietGoal was created and acquired the `516 Patent.   Domino's also does not provide any evidence that DietGoal engaged in any improper conduct throughout the litigation or during settlement negotiations.  Instead, Domino's merely argues that DietGoal is a "non-practicing entity" who sued numerous companies for infringement of the `516 Patent and collected a substantial amount of revenue by settling many of these claims.  Several courts, however, have rejected this same argument that the mere fact that a plaintiff is a non-practicing entity who has sued and settled with numerous defendants somehow is evidence establishing an "exceptional case."

Domino's also makes the frivolous argument that DietGoal's opposition to Domino's motion to transfer the lawsuit from the Eastern District of Texas to this Court was baseless. Domino's does not question that venue of the lawsuit was proper in the Eastern District of Texas. DietGoal appropriately argued that granting Domino's transfer motion would result in the creation of duplicative suits in different courts involving the same issues, creating practical difficulties that weighed heavily against transfer. This Court cited this same factor as a reason for denying Domino's second motion to transfer filed in this Court.

Equally frivolous is Domino's contention that DietGoal's MDL petition seeking to consolidate the dozens of related lawsuits involving the `516 Patent pending in a half-dozen different districts was baseless. Domino's does not identify anything improper about DietGoal seeking such sensible consolidation for pretrial proceedings of such related litigation involving numerous common questions of fact and law, and this Court consolidated DietGoal's lawsuit against Domino's with other related DietGoal lawsuits pending in this district for this same reason.

Finally, Domino's makes the untimely and improper request to add Messrs. Mitry and Salmon as parties to this case after judgment has been entered so attorneys' fees may be awarded against them individually. Domino's does not attempt to justify its inordinate delay in seeking this relief. Moreover, there has been no finding, and Domino's does not allege that Messrs. Mitry and Salmon personally engaged in inequitable conduct or any other tortious or egregious behavior necessary to justify disregarding the corporate structure of DietGoal and making Messrs. Mitry and Salmon liable for attorneys' fees.

## II.   ARGUMENT

### A.   The Applicable Legal Standard

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Section 285 restricts awards

of attorney's fees to "exceptional" cases.   Section 285 is itself an exception to what is often called the "American Rule" – the rule in American courts that each party to a lawsuit generally pays its own lawyers' fees, no matter who wins.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1753 (2014).  As the Court in *EON Corp. IP Holdings LLC v. Cisco Sys.*, 2014 U.S. Dist. LEXIS 101923, at \*19 (N.D. Cal. July 25, 2014), "application of the American Rule remains the well-established presumption even in patent cases, and this Court will not depart from it lightly."

"When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry."  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). The court first determines whether the case is exceptional and, if so, whether an award of attorney fees is justified.  *Id.* at 915-16 (citations omitted).  The Supreme Court in the *Octane Fitness* decision defined "an 'exceptional' case [as] simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

It is evident from the *Octane* Court's treatment of § 285 that awards of attorney's fees should be reserved for rare and unusual circumstances.   *See id.* at 1756 (stating that "exceptional" means "uncommon," "rare," or "not ordinary").   *See also id.* (citing *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951) (decided under the original fee-shifting statute, admonishing that courts should only award attorney's fees where necessary to correct injustice)).  The *Octane* decision also makes it clear that courts contemplating an award of attorney's fees should consider the totality of the circumstances in the case.  *See Octane*, 134 S. Ct. at 1756 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").  The predominant

4

factors to be considered, though not exclusive, are bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, and litigation misconduct. *Id*. at 1756. The *Octane* Court explained that there is no precise rule or formula for making those determinations and district courts should exercise "equitable discretion" in considering these nonexclusive factors. *Id*.

The mere fact that the losing party made a losing argument is not a relevant consideration. *See id*. at 1753 (fee awards are not to be used "'as a penalty for failure to win a patent infringement suit'" (*quoting Park-In-Theatres*, 190 F.2d at 142)). Further, although the Supreme Court clearly stated that "sanctionable conduct is not the appropriate benchmark" to award attorneys' fees, *Octane*, 134 S.Ct. at 1757, nevertheless, post-*Octane* decisions awarding attorneys' fees "have concerned egregious behavior." *Gametek, LLC, v. Zynga*, 2014 WL 4351414, at *4-5 (N.D. Cal. Sept. 2, 2014) (collecting cases). *See also LendingTree, LLC v. Zillow, Inc.*, 2014 U.S. Dist. LEXIS 146336, *34-35 (W.D.N.C. Oct. 9, 2014); *Small v. Implant Direct Mfg. LLC*, 2014 U.S. Dist. LEXIS 154468 (S.D.N.Y. Oct. 22, 2014) ("most cases awarding fees continue to involve substantial litigation misconduct."); *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 Fed. Appx. 877 (Fed. Cir. 2014) (patent owner repeatedly failed to introduce admissible evidence of infringement, filed unsolicited briefs after issues were taken under submission, and filed multiple meritless motions for reconsideration); *Cognex Corp. v. Microscan Sys., Inc.*, 2014 U.S. Dist. LEXIS 91203, 2014 WL 2989975 (S.D.N.Y. June 30, 2014) (defendants, who had willfully infringed, "engaged in unreasonable litigation tactics" such as making post-trial motions that sought purely to relitigate issues decided at trial).

For the reasons discussed below, the preponderance of the evidence does not warrant finding this case "exceptional" under § 285 and awarding attorneys' fees against DietGoal.

**B.      DietGoal's Defense of the Validity of the `516 Patent Under Section 101 Was Not Objectively Baseless**

Domino's argument that the `516 Patent "was clearly invalid under existing case law as claiming the abstract idea of meal planning with generic computer components," Dkt No. 150 at 2, is without merit.  As an initial matter, the `516 Patent, as with all issued patents, is presumed valid.  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).  As the Federal Circuit recently declared, "'[a] patent holder has the right to vigorously enforce its presumptively valid patent.'"  *Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 Fed. Appx. 877, 881 (Fed. Cir. 2014).

Moreover, the process for determining whether a patent claim fails to claim patentable subject matter under Section 101 has been far from an exact science.  Very little has been "clear" regarding the jurisprudence interpreting Section 101.   As the Federal Circuit observed in *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013), *vacated and remanded* by *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014), "[m]embers of both the Supreme Court and this court have recognized the difficulty of providing a precise formula or definition for the abstract concept of abstractness."  Similarly, in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013), *affirmed* by *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), Judge Pauline Newman characterized the Federal Circuit as being in a state of jurisprudential "deadlock," making patent eligibility under 35 U.S.C. § 101 a question "whose result will depend on the random selection of the panel."   *Id*. at 1380 (*en banc*) (Newman, J., dissenting).[1]

---

[1] *See also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013), *affirmed* by *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)   ("[D]eciding whether or not a particular claim is abstract can feel subjective and unsystematic, and the debate often trends toward the metaphysical, littered with unhelpful analogies and generalizations."); *MySpace, Inc. v. GraphOn Corp*., 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("When it comes to explaining what is to be understood by 'abstract ideas' in terms that are

The court in *Digitech Image Techs., LLC v. Newegg, Inc.*, 2013 U.S. Dist. LEXIS 147633 (C.D. Cal. Oct. 11, 2013), for example, denied a motion for attorneys' fees after the court found a patent invalid under Section 101, explaining as follows:

> Moreover, this Court invalidated the `415 Patent because it related to nonpatentable subject matter – something which would not have been revealed during a prefiling investigation. And the Federal Circuit itself has had difficulty agreeing upon the proper scope of § 101. *See MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1260 (Fed. Cir. 2012) (describing § 101 jurisprudence as a "murky morass"). Digitech asserted presumptively valid claims that were ultimately invalidated under a complex and evolving area of patent law. Without some additional evidence as to why Digitech should have known the `415 Patent would be invalidated, Newegg's naked baselessness accusations necessarily fail.

*Id*. at * 8. Similarly, in *Gametek, LLC v. Zynga*, 2014 U.S. Dist. LEXIS 122834 (N.D. Cal. Sept. 2, 2014), the court also denied a motion for attorneys' fees based upon the court's invalidation of a patent under Section 101, declaring that:

> It is particularly relevant here that the substantive law in this area was unsettled at the time of the prior Order. The Supreme Court had granted certiorari on the directly-applicable question of "[w]hether claims to computer-implemented inventions – including claims to systems and machines, processes, and items of manufacture – are directed to patent-eligible subject matter within the meaning of 35 U.S.C. § 101 as interpreted by this Court?" [citing *Alice*]. The case had been argued at the time this Court heard the motion for judgment on the pleadings, but a decision was not issued until June 2014 when the Supreme Court affirmed the Federal Circuit, holding that the abstract idea underlying the claims at issue was unpatentable and not saved by generic limitations requiring computer implementation. [Citation omitted]. While ultimately agreeing with the Federal Circuit, the decision in *Alice Corp.* provided additional clarity regarding computer system applications, an issue upon which the Federal Circuit, sitting *en banc*, had failed to provide a majority opinion.

*Id*. at * 11. Given the substantial uncertainty surrounding whether computer-implemented inventions qualify as patentable subject matter under Section 101, DietGoal's defense of the validity of the `516 Patent cannot reasonably be considered objectively baseless.

---

something less than abstract, courts have been less successful."). This problem is particularly pronounced in the computer-implemented invention context.

Moreover, DietGoal has presented substantial reasons why the claims of the `516 Patent are not invalid under Section 101.  DietGoal has appealed to the Federal Circuit the decision of the district court in *DietGoal Innovations LLC v. Bravo Media LLC (Division of NBC Univ. Media, LLC)*, Civil Action No. 1:13-cv-8391 (S.D.N.Y. July 8, 2014), finding the `516 Patent invalid under Section 101.  DietGoal has identified numerous and substantial flaws in that decision.  *See* Exhibit A – DietGoal's Opening and Reply Appellant Briefs.  The *Bravo* court granted summary judgment without conducting any claim construction and without any evidence before it other than the patent.  As a result of its failure to construe the relevant claim terms in the patent, the *Bravo* court repeatedly misstated the scope of the claims, contending that they are far broader than the limitations in those claims clearly specify.  The *Bravo* court stated that it viewed its task as "looking at this as a holistic patent with a variety of different claims or metes and bounds" and that it believed it was proper to "address[] the issue of patentability by looking at the totality of the invention . . . as opposed to having to undertake one by one this analysis as to 61 or whatever different claims."  Exhibit A – DietGoal's Opening Appellant Brief at pp. 1-2.  Eschewing any effort to consider the elements of each claim both individually and as an ordered combination to determine whether elements of the claims transform the nature of the claim into a patent-eligible application," the court found that the claims of the patent in suit, "viewed as a whole," recited nothing more than an abstract idea.  *Id.* at 2.  Evaluating the "essence" of the claims, the *Bravo* court minimized or ignored key limitations in the claims narrowing the scope of the claims to a particular application of a broader concept.  *Id.*  The *Bravo* court concluded that significant limitations with specific structure and functionality were "generic" and "purely conventional" without citing any evidence supporting this conclusion.  *Id.*

The *Bravo* court erred when it ruled that, as a matter of law, all of the claims of the `516 Patent broadly claim the abstract idea of meal planning to meet a person's nutritional goals.  *Id.*

The `516 Patent claims do not purport to claim all practical applications of meal planning to meet nutritional goals.  The claims of the `516 Patent recite a computer-implemented system and method requiring a specific configuration of computer hardware and software, with specified functions.  This includes a display of Picture Menus from which a user can select a meal to meet a "customized eating goal," and a Meal Builder with specified functionality, including the ability to enable a user to create or change a meal and view the impact of any change on the user's "customized eating goal."  *Id.*  The user's "customized eating goals" must be computer implemented.  Many of the dependent claims recite additional computer related limitations that, when combined with the limitations of the independent claims, are sufficient to ensure that those claims require significantly more than the abstract idea of meal planning to meet a person's nutritional goals.  *See, e.g.,* `516 Patent Reexamination Certificate, claim 30 ("wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals"); claim 38 ("wherein the Meal Builder displays on the User Interface revised nutrition information in real-time for a resulting meal as the content of the resulting meal is changed").  These limitations do not reflect mere generic computer implementation, as the *Bravo* court concluded, and there is no evidence in the record to support this conclusion.  Thus, the specific claim limitations in the `516 Patent restricting the scope of the claims to a particular application of computer-implemented meal planning are sufficient to preclude preemption of the abstract idea of meal planning to meet nutritional goals.

The *Bravo* court's assertion that the `516 Patent's claim limitations are "nothing more than 'post-solution activity' that cannot render the process patentable" is wrong.  *Id.* at 16.  The `516 Patent's claim limitations are central to the solution offered by the `516 Patent of providing "computerized visual techniques for training individuals to modify dietary behavior."  *Id.*  The *Bravo* court expressly acknowledged that the `516 Patent's claim limitations enabled the `516

Patent to provide "'a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices." *Id.* The Federal Circuit has recognized that "[i]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010).

Also without any basis is the *Bravo* court's finding that the claims of the `516 Patent recite steps that could "be performed in the human mind, or by a human using a pen and paper." *Id.* A human cannot perform in his or her mind the function of establishing computer-implemented dietary objectives and then generating the claimed Picture Menus displaying images of meals that a user can select from to meet those objectives. These functions can only be performed by a computer. Similarly, the human mind cannot perform the functions of the claimed "Meal Builder" that require, among other things, the ability to create or change meals and then view a display of the impact of a created or modified meal on the user's computer-implemented dietary objectives. Only a computer can perform these functions. The same can be said of the computer-related limitations added by the dependent claims of the `516 Patent.[2]

Suffice it to say, whether or not the Federal Circuit agrees with DietGoal's arguments and reverses the *Bravo* court's decision, one cannot reasonably assert that DietGoal's arguments regarding the validity of the `516 Patent under Section 101 issue lacked merit.

---

[2] Domino's assertion that the court presiding over the DietGoal litigation in the Eastern District of Texas "determined that the `516 patent is invalid under § 101" is not correct. The Texas court entered summary judgment in favor of the defendants in that case "based on the collateral estoppel effect of the decision of another district court." Dkt No. 95 at 1. The court did not conduct an independent analysis of whether the asserted claims of the `516 Patent were invalid under Section 101. *See Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983) ("it is clear from the case law that has developed since *Blonder-Tongue* that an inappropriate inquiry is whether the prior finding of invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit.").

## C.    DietGoal's Has Not Asserted an Objectively Baseless Infringement Theory Against Dominos

Domino's asserts that the "Domino's accused website has no 'customized eating goals' accessible to the system (a requirement of every claim) . . . ." Motion at 2. Domino's argument is without merit. First, Domino's argument is based upon the claim construction ruling by the court in the Eastern District of Texas and misrepresents that court's claim construction ruling. The Texas court construed "customized eating goals" to mean "computer implemented, user-specific, dietary objectives." C.A. No. 2:12-cv-00761, Dkt No. 308 (the "*Markman Order*") at 21. The Texas court's claim construction ruling, however, did not include any requirement that the goal be "accessible to the system," as Domino's contends. As the court stated in its *Markman Order*, "[t]he Defendants asserts that 'stored' is included [in their proposed construction] only to make clear that the goals are computer implemented and accessible by the computer . . . [t]he Court's construction achieves this purpose in a manner that it believes would be understandable to the jury by explicitly addressing that the goals are computer implemented, while avoiding reading a **new limitation** into the claim as Defendants request." *Id*. at 21 (emphasis added).[3]  Thus, the court in the Eastern District of Texas rejected the attempt of defendants to include a new limitation – requiring that the customized eating goals be "stored" or "accessible by the computer" – and consciously omitted the terms "stored" and "accessible by the computer" from the court's construction.

Domino's argues that "DietGoal has never argued or presented evidence that the accused Domino's website has goals 'accessible by the computer.'" Motion at 14. Domino's argument is based on an improperly narrow claim construction that was rejected by the court in the Eastern

---

[3] Domino's intentionally ends its quote of the court's *Markman* Order after the phrase "[t]he Court's construction achieves this purpose . . . ," no doubt to make it seem as though the court in the Eastern District of Texas required that the goals be "accessible to the system." An examination of the entire passage from the *Markman* Order, however, reveals that the opposite is true, and that the court in fact **declined** to include any "stored" or "accessible to the system" limitation in its construction.

District of Texas.  DietGoal was not required to argue or present evidence that Domino's website has goals "accessible by the computer," as the Eastern District of Texas court rejected the proposal to include this limitation in its construction of "customized eating goals."  Instead, comporting with the *Markman Order*, DietGoal provided infringement contentions setting forth DietGoal's infringement theory against Domino's, including a detailed analysis of how Domino's website provided customized eating goals in the form of "computer implemented, user-specific, dietary objectives."  *See* Exhibit B – DietGoal's Preliminary Infringement Contentions against Domino's.

Similarly without merit is Domino's assertion that the "customized eating goals" cannot involve any mental step. Dkt No. 150 at 6-7, 13-15.  In the *Markman Order*, the Texas court rejected the notion that customized eating goals are *solely* within the user's mind, explaining that the claims, specification, and file history of the patent-in-suit require that the goals be computer implemented. *Markman Order* at 19.  Additionally, in the *Markman Order* footnote emphasized by Domino's, the Texas court stated that the goals may not be *merely* a mental process.  *Id*. at 20 n.4.  The court's rulings in the *Markman* Order do not, however, support Domino's argument that *no* mental step (*e.g.*, the goal originating from the user) is permitted.  That the goals may not be "*merely*" a mental process does not mean "that the system cannot 'invoke' or 'encompass' a[ny] mental process," as Domino's suggests.  Motion at 14.

Domino's also incorrectly asserts that "DietGoal told the USPTO that the invention does not 'invoke' a mental process."  Motion at 17.  Domino's conveniently omits the entirety of the statements made by DietGoal to the USPTO during the reexamination of the `516 Patent. DietGoal did **not** state to the USPTO that *no* mental step is permitted.  Rather, DietGoal stated that "[i]n contrast to Venner, the claimed "computerized [meal] planning" system/method does

not invoke a mental process *like the time controlled means*" of Venner.  *See* Exhibit C – OA Resp. Office Action, Reexamination No. 95/001,959 (July 19, 2012) at 22 (emphasis added).

Furthermore, as Domino's eventually concedes, this Court has not entered a claim construction ruling or adopted the Texas court's claim construction rulings as its own claim construction in this litigation.  The Texas court's claim construction ruling was issued after DietGoal's lawsuit against Domino's was transferred to the Eastern District of Virginia and, therefore, is not binding on DietGoal, Domino's or this Court.  Thus, Domino's arguments based on the Texas court's *Markman Order* are completely irrelevant in this litigation.  DietGoal's counsel performed a thorough pre-suit investigation of Domino's infringement of the `516 Patent, *see* Declaration of Eric W. Buether, and prepared and served detailed infringement contentions showing precisely how Domino's accused instrumentalities infringe the `516 Patent. *See* Exhibit B.[4]

Domino's asserts that "DietGoal offers no evidence that any user of Domino's nutrition calculator has 'adopted' a goal based on using a system . . . ."  Dkt No. 150 at 14.  Domino's argument is without merit because the language of the claims only requires that an infringing system have the capability of allowing a user to adopt dietary values as a user's "customized eating goals."  For example, the portions of Claim 1 highlighted below demonstrate that this claim is drawn to capability:

> 1.   A system of computerized meal planning, comprising:
>       a User Interface;
>       a Database of food objects **organizable** into meals;
>       at least one Picture Menus, which displays on the User Interface meals
>       from the Database **that a user can select from to meet customized
>       eating goal[s]**.

---

[4]   DietGoal's infringement contentions also illustrate how Domino's accused website has functionality well-beyond a mere "nutrition calculator."  Motion at 15.

`516 Patent, Claim 1 (emphasis added).  Similarly, the language of Claim 2 demonstrates that it,

too, is directed to capability:

> 2.    A system of computerized meal planning, comprising:
>        a User Interface;
>        a Database of food objects; and
>        a Meal Builder, which displays on the User Interface meals from the
>        Database, and **wherein a user can change content of said meals and
>        View the resulting meals' impact on customized eating goals.**

`516 Patent, Claim 1 (emphasis added).

Thus, because claim 1, for example, requires the capability "that a user can select from

[the displayed meals] to meet customized eating goals," in order to show infringement of this

claim limitation, DietGoal need only show that the accused Domino's website is capable of

allowing a user to select a meal from the displayed meals in order to meet customized eating

goals.[5]  Similarly, because Claim 2 requires the capability that "a user can change content of said

meals and view the resulting meals' impact on customized eating goals," to show infringement

of this limitation DietGoal need only show that the accused Domino's website is capable of

allowing the user to change content of meals and view the impact on customized eating goals.

While DietGoal's infringement action against Domino's never progressed to the point of

expert testimony, DietGoal would have submitted expert testimony showing how the accused

Domino's website satisfies the "customized eating goals" limitation, and would have shown

ample circumstantial evidence in the form of the number of visitors to the accused Domino's

nutrition calculator from which a reasonable juror could have inferred that users are more likely

than not to have used the accused Domino's website in the described infringing manner.

---

[5] The Federal Circuit has articulated the general rule as follows: "in determining whether a
product claim is infringed, we have held that an accused device may be found to infringe if it is
reasonably capable of satisfying the claim limitations, even though it may also be capable of
non-infringing modes of operation."  *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343
(Fed. Cir. 2001) (citing *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832
(Fed.Cir.1991).

Therefore, Domino's assertion that "DietGoal had no objectively reasonable chance of succeeding on this theory" is without merit, and Domino's has not demonstrated that DietGoal's infringement position with respect to "customized eating goals" is "exceptional" from a Section 285 standpoint.  Motion at 14.

Domino's, therefore, has completely failed to make a showing that DietGoal's infringement theory asserted against Domino's was baseless.  As one court explained, "where a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims."  *Small v. Implant Direct Mfg*. LLC, 2014 U.S. Dist. LEXIS 154468 at *9 (S.D.N.Y. Oct. 22, 2014).  *See also EON Corp. IP Holdings LLC v. Cisco Sys. Inc*., 2014 U.S. Dist. LEXIS 101923  (N.D. Cal. July 25, 2014) (even where plaintiff's argument was "quite stretched" and its conduct "difficult to explain," the court could not "quite conclude that no reasonable patentee could see an opening . . . through which the argument could be squeezed"); *Gametek LLC v. Zynga, Inc.*, 2014 U.S. Dist. LEXIS 122834 (N.D. Cal. Sept. 2, 2014) (conceding that plaintiff's briefing, which "consisted of granular parsing of the claimed steps rather than any substantive explanation of how [the invention] differed from the underlying abstract idea," was inadequate but insisting that it "did not, however, descend to the level of frivolous argument or objective unreasonableness").

It is also well established that "[a] claim construction ruling alone does not suffice to end a case at the trial court."  *Kaneka Corporation v. Zhejiang Medicine Co., Ltd.*, 2014 U.S. Dist. LEXIS 91659 at *10 (N.D. Cal. May 23, 2014) (collecting cases).  In *Kaneka*, the court denied a motion for attorneys' fees, rejecting the argument that "[i]mmediately following the claim construction, when Kaneka should have known that Defendants did not infringe the `340 Patent, Kaneka was obligated to stop pursuing the case or face paying attorney fees," and holding that

granting an attorneys' fees motion following an adverse claim construction would unfairly preclude parties from appealing claim construction issues.  *Id.*

### D.   Domino's "Subjective Bad Faith" Arguments are Frivolous

Domino's assertion that DietGoal is a non-practicing entity created for "extracting settlements by leveraging the cost of litigation" is unsupported by any evidence and is nothing more than irresponsible and unprofessional rhetoric.

To begin with, Domino's asserts that Mr. Daniel Mitry and Mr. Timothy Salmon – the two principals who own DietGoal – are also the principals of another entity called Empire IP, LLC ("Empire IP"), and that Empire IP "creates a separate company named after a general description of the patent it wishes to assert (*e.g.*, 'DietGoal')."  This assertion is false.  Empire IP had nothing to do with the formation of DietGoal.  In fact, Empire IP did not even exist at the time DietGoal was created.  Exhibit D – Deposition of Daniel Mitry at 141; *see also* Exhibit E – Declaration of Daniel Mitry.  Domino's was certainly aware of this fact, given its own citations to other deposition testimony by Mr. Mitry.  Domino's false representation to this Court to the contrary is inexcusable

Citing to the deposition testimony of Daniel Mitry, Domino's falsely asserts that "Mitry was combing the internet for patents that would support a profitable litigation campaign, and he came across a suitable weapon in the facially broad `516 Patent that, if stretched beyond its reasonable bounds, could target an entire industry."  Dkt No. 150 at 5.  Domino's grossly misrepresents Mr. Mitry's testimony.  When Mr. Mitry was asked how he became aware of the `516 Patent, Mr. Mitry testified that "I was looking at a bunch of patents, so I was just looking for patents of interest.  The `516 just happened to stand out to me."  *See* Dkt No. 149 – Exhibit C, 251:20-252:6.  Mr. Mitry's testimony that the "`516 just happened to stand out to me" does not even come close to supporting Domino's baseless assertion that Mr. Mitry was "combing the

internet for patents that would support a profitable litigation campaign [to] target an entire industry."

Similarly without merit is Domino's assertion that "[p]atent lawyers Mitry and Salmon created DietGoal to capitalize on the high costs of defeating a patent litigation case on the merits." Dkt No. 150 at 15. The portions of Messrs. Mitry and Salmon's depositions to which Domino's cites in support of this assertion merely establish that Mitry and Salmon are both attorneys licensed to practice in New York (but not licensed to practice in Texas), and that Mr. Salmon is a licensed patent attorney. Neither Mr. Mitry nor Mr. Salmon, however, testified that they "created DietGoal to capitalize on the high costs of defeating a patent litigation case on the merits," and this assertion by Domino's is nothing more than a scurrilous fabrication. Rather, DietGoal was created to assist the inventor of the `516 Patent, Dr. Alabaster, with the enforcement and licensing of the `516 Patent. As Dr. Alabaster testified, had Mr. Mitry not approached him and offered to assist in the enforcement of the `516 Patent, "[m]y invention would have been exploited by a variety of corporations without them paying due royalties." *See* Exhibit F (Alabaster Deposition, Vol. III, pp. 1060:8-13).

Domino's argument that DietGoal prosecuted this lawsuit with "subjective bad faith" is based on nothing more than the fact that DietGoal is a "non-practicing entity" who sued numerous companies for infringement of the `516 Patent and collected a substantial amount of revenue by settling many of those claims. Dkt No. 150 at 1-2, 5, 15, 17. Several courts, however, have declined to view the mere fact that a plaintiff is a non-practicing entity who has sued and settled with numerous defendants as evidence establishing an "exceptional case." In *Digitech*, for example, the court faced a similar argument and soundly rejected it as follows:

> Newegg's primary argument is that Digitech's multi-suit litigation alone makes this case exceptional. [Citation omitted]. Newegg claims that "Digitech has engaged in a nationwide strategy to file lawsuits against many defendants with the goal of forcing settlements from the named defendants." [Citation omitted]. But

17

> **Newegg offers nothing to support its accusation of extortion-like litigation tactics other than the numerous suits brought by Digitech.  Mere evidence that Digitech has filed suit against many other parties does not, by itself, prove that the suit is unjustified or brought in bad faith**.  [Citation omitted].

2013 U.S. Dist. LEXIS 147633 at 9 (emphasis added).  Domino's makes the same baseless and

unsupported argument.

The *Digitech* court noted that there is a reasonable and legitimate explanation why a

patentee might bring numerous lawsuits against accused infringers:

> Additionally, the multiplicity of suits in this action is a function of the stringent joinder requirements of § 299 of the America Invents Act – something wholly unrelated to the merits of the case.  35 U.S.C. § 299.  **Newegg improperly equates Digitech's maintenance of multiple severed infringement suits with the systematic filing of bad-faith actions designed to collect small nuisance-value settlements**.  Newegg provides no admissible evidence that any "shake-down" settlement negotiations took place, or that other parties to this action were coerced into nuisance-value settlements.

*Id*. at 9-10 (emphasis added).  Domino's makes the same improper argument.

Finally, the *Digitech* court responded to the defendants' general attack on "patent trolls"

by pointing out the following:

> The Court is not persuaded by Newegg's rote attempt to shift the burden of paying legal fees by hurling Digitech into the crusade against 'Patent Trolls.'  A party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants.

*Id*. at 2.  The court further observed:

> Certainly, the practice of bringing unmeritorious claims only to dismiss them after inflicting substantial litigation costs is a blight on the patent system.  But it has not been shown that is the situation in this action. Digitech has not displayed a "lack of regard for the judicial system" or a "cavalier attitude" to the patent-litigation process as a whole. *Eon-Net LP,* 653 F.3d at 1314.  **While Newegg makes much of the burden placed on the judicial system from baseless infringement claims, the Court notes that motions lacking factual and legal support also unduly burden the judicial system**.  All parties should be mindful of the limited resources of the Court and the challenges it faces in preserving judicial resources.

*Id.* at 10.  Other courts have echoed the viewpoint expressed by the *Digitech* Court.  The court in

*IPVX Patent Holdings, Inc. v. Voxernet, LLC*, 2014 U.S. Dist. LEXIS 83860 (N.D. Cal. June 17,

2014), for example, observed that "courts have declined to find that a party is 'automatically the

villain simply because it brings infringement allegations against multiple defendants.'"  *Id*. at 5-6

(citing *Digitech*).  *See also GeoTag, Inc. v. Zoosk, Inc.*, 2014 U.S. Dist. LEXIS 24782 at *11

(N.D. Cal. Feb. 26, 2014) ("that GeoTag may be a serial litigant does not mean (or even imply)

that its claims are inherently brought in bad faith or without merit.")

In *Charge Lion, LLC v. Linear Technology Corp.*, Civil Action No. 6:12-cv-00769-JDL

(E.D. Tex. Aug. 25, 2014), the court observed that, "[i]n support of its argument that Charge

Lion [the plaintiff] acted in bad faith based on its settlement attempts with other defendants in

this case, Linear [the defendant] offers essentially bare allegations that Charge Lion is a

'secretive shell' corporation that exists for th[e] sole purpose of using the `702 Patent to extract

such settlements.'"  *Id*. at 3-4.  The court rejected this argument, pointing out that "Linear

provides no other evidence of any improper settlement negotiations or that other defendants in

the case were strong-armed into paying license fees."  *Id*. at 4.

Similarly, in *SFA Systems. LLC v. 1-800-Flowers.com, Inc.*, Civil Action No. 6:09-cv-

00340-LED (E.D. Tex July 8, 2014), the court remarked that "Newegg [the defendant] contends

that SFA [the plaintiff] never intended to try this case on the merits, but filed this action solely to

extract a settlement.  [Citation omitted].  Newegg supports this claim by asserting that SFA has

engaged in a pattern of repeatedly suing defendants, then settling for far less than the potential

damages recovery" and that "Newegg's primary complaint is that SFA has filed many suits

against many defendants, therefore engaging in a pattern of abusive and vexatious litigation to

extract settlement."  *Id*. at 3-4.  The court rejected this argument, declaring that "the fact that

SFA has filed several lawsuits against numerous defendants is insufficient to render this case

exceptional. In many cases, patent infringement is widespread and the patent owner may be forced to revert to widespread litigation against several infringing parties to enforce its intellectual property rights." *Id*. at 4.

Finally, in *Site Update Solutions, LLC v. Accor North America, Inc.*, Civil Action No. 5:11-cv-03306-PSG (N.D. Cal. May 21, 2013), the court rejected the same kind of argument advanced by Domino's, finding that "the court cannot say that SUS's settlements with the defendants for amounts below the cost of defense are, by themselves, enough to warrant a finding of subjective bad faith. Patentees with meritorious arguments can seek settlements far below the cost of defense, especially if they do not want to spend significant amounts of money to protect their patents." *Id*. at 28.

Thus, Domino's attack on the settlement license agreements involving the `516 Patent as reflecting "nuisance value settlements" is frivolous. Domino's does not point to any evidence in support of its conclusory assertion that the settlement payments reflected merely litigation cost avoidance, and not the potential value of the patented technology. The fact that a settlement payment is less than the cost of litigation does not indicate that it is a "nuisance payment" that provides no information regarding a reasonable royalty.

Furthermore, upon a finding of infringement, the patent law provides for an award of "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Congress did not provide an exception to this statutory mandate of damages of nothing less than a reasonable royalty if such damages are exceeded by today's unfortunately high cost of litigating a patent case. A party cannot be criticized for legitimately petitioning the courts for redress for patent infringement simply because the minimum reasonable royalty damages it seeks are less than what a defendant may have to spend to defend against the legally and factually supported claim.

As the court declared in *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, 2014 U.S. Dist. LEXIS 71753 at *6 (D. Del. May 27, 2014), "even if the amount of damages were small relative to the cost of litigation, which seems likely based on the arguments of the parties, the Court is unaware of any *de minimis* exception for infringement."

### E.   Domino's Contentions about DietGoal's Venue Positions are Frivolous

Also frivolous and improper is Domino's argument that "DietGoal filed suit in the improper, patent-friendly Eastern District of Texas venue and baselessly fought to keep the case there." Motion at 5.

To begin with, Domino's accusation that the Eastern District of Texas is a "patent-friendly" venue constitutes an improper derogatory remark about a sister court. Domino's accusation clearly insinuates that the judges of the Eastern District of Texas are biased in favor of patentees and do not impartially apply the law in patent infringement cases. Such an accusation is unsubstantiated and unprofessional, and should not be countenanced.

In addition, when DietGoal sued Domino's in the Eastern District of Texas, Domino's never argued that venue was "improper" in that judicial district. Instead, Domino's merely requested a transfer for convenience pursuant to 28 U.S.C. § 1404. Domino's asserts that "DietGoal filed its case in the Eastern District of Texas despite having not a single connection with Texas." Motion at 5. This assertion is false. DietGoal was and still is incorporated in Texas, and at the time had sued numerous other parties in the Eastern District of Texas for infringement of the `516 Patent.

Also without merit is Domino's complaint that "Domino's was added to the lawsuit after Congress passed the new joinder provision in the America Invents Act." *Id*. at 6. DietGoal added Domino's to the lawsuit referred to as the *Arby's* lawsuit, which was filed before the effective date of the America Invents Act. At that time, it was not clear whether the relation back doctrine under Rule 15(c) of the Federal Rules of Civil Procedure applied to an amended

complaint adding additional parties to a lawsuit for infringement of the same patent. *See*, *e.g.*, *Softview LLC v. Apple Inc.*, No. 10-389-LPS, 2011 U.S. Dist. LEXIS 140540 (D. Del. Dec. 7, 2011). *See also* Dkt No. 7.

DietGoal's arguments in opposition to Domino's motion to transfer were eminently reasonable. DietGoal pointed out that Domino's motion to transfer, when considered with the other motions to transfer filed by other defendants, would "create ten separate actions across at least six judicial districts in addition to the one in this District with the remaining non-moving Defendants, and that "the existence or creation of duplicative suits in different courts involving the same or similar issues may create practical difficulties that weigh heavily in favor of or against transfer." Dkt No. 7 at 8-9. No one can reasonably contend that such arguments are without merit.

On November 19, 2013, the Court denied Domino's motion to transfer this case to the Eastern District of Michigan, pointing out that, "[a]s to the consideration of splitting multiple similar cases across different districts, this factor weighs slightly in favor of keeping the cases in the Eastern District of Virginia." *Id.* at 18. The same was true when DietGoal argued against transfer of its lawsuit against Domino's and other defendants.

Entirely meritless is Domino's criticism of DietGoal's MDL motion seeking to consolidate the dozens of related lawsuits involving the `516 Patent pending in a half-dozen different districts. Domino's does not identify anything improper about DietGoal seeking such sensible consolidation for pretrial proceedings of such related litigation involving numerous common questions of fact and law. Indeed, on December 17, 2013, this Court issued an order consolidating DietGoal's lawsuit against Domino's with other related DietGoal lawsuits pending in this district, finding "that these cases involve common questions of law and fact and that other considerations support consolidation." Dkt No. 85 at 2. The Court emphasized that "Defendants

Domino's and Dunkin's Answers raise overlapping defenses and counterclaims." *Id*. at 2-3. These same reasons supported DietGoal's MDL Motion.  The Judicial Panel on Multidistrict Litigation denied DietGoal's motion, not because it lacked merit, but because of the "[t]he disparate progress of the actions, the heightened inconvenience that transfer may cause certain parties, and the history of dismissals in this litigation. . . ."  MDL No. 2507 at 2.

Finally, Domino's claim that it "was forced to go forward with discovery, only to start all over again in another venue" because DietGoal opposed its pending motion to transfer is false. Motion at 6.  Domino's does not point to any evidence that it had to "start all over again" with discovery after this lawsuit was transferred to this Court, and there is none.

Accordingly, Domino's arguments regarding DietGoal's litigation positions with respect to venue are unprofessional, unsubstantiated, and misleading.

**F.     The *Lumen View* Decision is Inapposite**

Domino's relies heavily on the district court decision in *Lumen View Technology, LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014).  This reliance is misplaced, as the *Lumen View* decision is readily distinguishable.   In *Lumen View*, the court found "Lumen's lawsuit against FTB was 'frivolous' and 'objectively unreasonable.'"  *Id*. at 335.  The court found that "no reasonable litigant could have expected success on the merits in Lumens' patent infringement lawsuit against FTB because the `073 Patent claimed a bilateral matchmaking process requiring multiple parties to input preference information, while FTB's 'AssistMe' feature utilizes the preference data of only one party."  *Id*.  The court further found that "the most basic pre-suit investigation would have revealed this fact," that "Lumen was certainly on notice of this fact from the outset of the litigation," and that "Lumen proceeded with an obviously baseless lawsuit, failing to point to any specific way in which FTB infringed the patent."  *Id*. at 336.  Only after the Court in *Lumen View* made these explicit findings of Lumen's willful pursuit of objectively baseless claims did the court delve into the plaintiff's litigation tactics as further

evidence supporting an exceptional case finding.  There the court emphasized "Lumen's threats of 'full-scale litigation,' 'protracted discovery,' and a settlement demand escalator should FTB file responsive papers."  *Id*.  Even Domino's acknowledges that the plaintiff in *Lumen View* engaged in "egregious conduct" and "aggressive litigation tactics."  Motion at 16-17.  Yet, tellingly, Domino's provides no evidence that DietGoal engaged in any such egregious conduct or employed any aggressive litigation tactics.

Here, Domino's improperly attempts to put the cart before the horse – attacking DietGoal's pursuit of infringement claims against multiple defendants seeking modest damages without first establishing that such claims were objectively baseless.  *Compare Rates Tech., Inc. v. Broadvox Holding Co., LLC*, 2014 U.S. Dist. LEXIS 142998 (S.D.N.Y. Oct. 7, 2014) ("Broadvox argues that RTI is a non-practicing entity and hyper-litigious.  However, even if these contentions are accurate, the absence of any evidence in the record demonstrating that RTI's claims were frivolous precludes Broadvox from asserting that it should not have had to incur the costs of defending this litigation.  If RTI's claims had merit, its status as a hyper-litigious non-practicing entity should not prevent it from bringing suit.").  As explained above, Domino's utterly fails to establish that DietGoal's claims were baseless or that DietGoal engaged in any threatening or other aggressive litigation conduct such as that found by the court in *Lumen View*.  Rather, Domino's bases the entirety of its allegations on unsubstantiated rhetoric.

## G.     Domino's Belated Request to Add Mitry and Salmon as Parties Should be Rejected

Domino's compounds the harm resulting from its baseless motion for attorneys' fees by requesting, after the Court has already entered judgment, that the owners of DietGoal – Mr. Mitry and Mr. Salmon – be joined as parties to this litigation based on the allegation that DietGoal "does not have a revenue stream to satisfy any award of attorneys' fees."  Motion at 18. This request is without merit.

First, Domino's fails to explain why it waited until now – nearly two and a half years after DietGoal filed its lawsuit, and after the Court entered judgment in this case – to seek leave to add Messrs. Mitry and Salmon as parties.  Since the inception of this lawsuit, Domino's was aware that DietGoal is a non-practicing entity and that Messrs. Mitry and Salmon are principals of DietGoal.  Domino's does not contend that it did not know or could not have known about these facts until recently.

In similar circumstances, courts have rejected attempts to add non-parties to an action.  In *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 2008 U.S. Dist. LEXIS 54615 (S.D.N.Y. July 17, 2008), the court was "unwilling to entertain, at [an] extremely late hour," defendants request to join plaintiff patent owner's sole member/shareholder, "especially when [defendant] could have named [plaintiff's sole shareholder] at a much earlier point," were "certainly aware of [plaintiff's sole shareholder]" and his involvement in the action, and provided "no justification for [their] failure to name" plaintiff's sole shareholder earlier in the case.  *See id.*, *rev'd on other grounds,* 607 F.3d 817 (Fed. Cir. 2010).  Here, as in *Advanced Magnetic Closures*, Domino's, without any justification, waited until after judgment was entered to seek leave to join Messrs. Mitry and Salmon.  Accordingly, Defendants' untimely request should be denied.

Second, Domino's has not set forth a factual or legal basis for joining Messrs. Mitry and Salmon as parties in this case and making them liable for an award of attorneys' fees.  The Federal Circuit in *Hoover Group v. Custom Metalcraft*, 84 F.3d 1408, 1411 (Fed. Cir. 1996), emphasized that "[t]he policy considerations that underlie the corporate structure yield to personal liability for corporate acts only in limited circumstances."  Domino's does not allege that it has a basis for piercing DietGoal's corporate veil to justify naming its owners as parties and as liable for any award of attorneys' fees under Section 285.  Domino's also has not shown

that any "limited circumstances" apply in this case to justify making Messrs. Mitry and Salmon liable for an award of attorneys' fees based upon DietGoal's claims in this case.

Domino's conclusory assertion that DietGoal "does not have a revenue stream to satisfy any award of attorneys' fees" is insufficient to allow it to join Messrs. Mitry and Salmon as parties and make them liable for an award of attorneys' fees. Domino's allegations about the unrelated patent assertion activities of Empire IP also do not provide any basis for doing so. As established above, Empire IP is an entity unrelated to DietGoal. Empire IP never owned the `516 Patent and did not assign it to DietGoal. Empire IP did not create DietGoal or ever own any interest in DietGoal. Domino's assertions suggesting otherwise are simply baseless.

The fact that Messrs. Mitry and Salmon are the sole owners of DietGoal is certainly not a basis for making them personally liable for an award of attorneys' fees in this case, as the Federal Circuit's decision in *Hoover* establishes. Similarly, the fact that Messrs. Mitry and Salmon are both "attorneys currently licensed to practice law in the State of New York" and "registered patent attorneys licensed to practice before the United States Patent and Trademark Office" does not provide a basis for imposing personal liability on them for an award of attorneys' fees.

Domino's further asserts that "the conduct that makes this case exceptional is DietGoal's continued assertion of objectively baseless infringement position on a clearly invalid patent," and that "[i]t cannot be disputed that Mr. Mitry and/or Mr. Salmon have played an active role in guiding and perpetuating this litigation." Motion at 20. As explained above, there is no basis for Domino's contention that, in this litigation, DietGoal continued to assert an "objectively baseless infringement position on a clearly invalid patent." Furthermore, Domino's fails to provide any support for its conclusory assertion that Messrs. Mitry and Salmon "played an active role in guiding and perpetuating this litigation." *Id.* It is undisputed that DietGoal has been represented

by outside counsel throughout this litigation.  That the owners of a closely-held corporation involved in litigation remain apprised of the progress of that litigation through discussions with their outside counsel is hardly remarkable or a basis for making those owners personally liable for an award of attorneys' fees based upon the corporation's assertion of claims in the litigation.

Domino's cites as support for its request the decisions in *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985), and *Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1349 (Fed. Cir. 1999), *rev'd sub nom.*, *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 472 (2000).  These cases, however, do not support Domino's request.

In *Machinery Corp. of America*, Mr. Schneider was the agent in the United States for the corporate entity GINT, which asserted that Machinery Corp. of America infringed its patent. Schneider personally sent a letter to numerous potential customers of Machinery Corp. of America asserting that the products they manufactured and sold through Machinery Corp. of America infringed GINT's patent.  *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 469 (Fed. Cir. 1985).  Machinery Corp. of America sued GINT and Schneider contending, among other things, that GINT's patent infringement claim was baseless and that GINT and Schneider acted in bad faith by sending the threatening notice letter.  *Id.* at 470.  Subsequently GINT dissolved.  *Id.*  On appeal of the district court's award of attorneys' fees against Schneider, the Federal Circuit explained that the district court's assessment of fees against Schneider was apparently based on "tortious acts individually committed" by Schneider, including Schneider's "erroneous conclusion of infringement, his failure to procure the advice of counsel before sending [infringement] letters which he signed, and his lack of cooperation during the litigation." *Id.* at 475.  The Federal Circuit vacated the district court's judgment and remanded the case, explaining that although "an individual may be assessed fees under § 285 if his conduct supports a finding that the case is exceptional," "Schneider may be assessed fees individually only if the

district court finds that [Machinery Corp. of America] has proved by clear and convincing evidence that his actions were in fact tortious or were undertaken in a personal capacity and not as agent of GINT." *Id.*

In contrast, Domino's did not previously name Messrs. Mitry and Salmon as parties, and there has been no finding by any court, and Domino's does not assert, that either Mr. Mitry or Mr. Salmon engaged in any egregious or tortious activity in their personal capacities. Instead, the only basis cited by Domino's to join Messrs. Mitry and Salmon is their alleged "active role" on behalf of DietGoal in the prosecution of DietGoal's claim of patent infringement against Domino's. This is insufficient, whether under *Machinery Corp. of America* or the remaining authority cited by Domino's, to join Messrs. Mitry and Salmon and hold them personally liable for an award of attorneys' fees.

Similarly, in *Ohio Cellular Products*, the Federal Circuit upheld the district court's decision allowing the defendant to add Ohio Cellular's principal, Nelson, as a party, and awarding attorneys' fees against Nelson because "it is undisputed on appeal that Nelson personally committed the acts of inequitable conduct which were the basis for the fee award." *Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1348 (Fed. Cir. 1999), *rev'd sub nom.*, *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 472 (2000). The Federal Circuit emphasized that "there is no dispute that the conduct before the Patent Office giving rise to the claim for attorney fees is indeed the very same conduct that forms the basis for naming Nelson as a third-party defendant and for holding him personally liable for attorney fees: *his own acts of inequitable conduct.*" *Id.* at 1350 (emphasis added). Thus, the Federal Circuit allowed Nelson to be added as a party and held liable for an award of attorneys' fees under Section 285, because Nelson was found to have engaged in inequitable conduct, and it was this very conduct that

28

formed "the sole basis for finding the case exceptional and … awarding attorney fees." *Id*. at 1348.

In this case, however, there has been no finding by any court, and Domino's has not even asserted that Messrs. Mitry or Salmon engaged in any inequitable conduct that could provide a basis for an exceptional case finding.  Again, Domino's merely asserts that Messrs. Mitry and Salmon had an "active role" on behalf of DietGoal in the prosecution of DietGoal's claim of patent infringement against Domino's.  This is an insufficient basis to allow for the joinder of Messrs. Mitry and Salmon as parties, or for the imposition of attorneys' fees against them.

Domino's also relies upon the district court decision in *Applied Materials, Inc. v. Multimetrixs, LLC*, 2009 WL 1457979 (N.D. Cal. May 26, 2009).  Motion at 20.  Such reliance is misplaced.  *Applied Materials* involved the district court's finding of extensive egregious misconduct by MultiMetrixs' members, including bribery, forgery, lying under oath at deposition and at trial, and inequitable conduct.  *Applied Materials* at *1-2.  It was this very "litigation misconduct and . . . inequitable conduct" of Multimetrixs' members that made "a fee award . . . appropriate."  *Id.* at *2.  *See also id.* at *5 ("Here, as in *Nelson*, it was the conduct of Multimetrixs' principals . . . that led this court to find inequitable conduct before the PTO.").

In contrast, there are no allegations by Domino's or any findings by any court that Messrs. Salmon or Mitry engaged in any misconduct.

Accordingly, because Messrs. Mitry or Salmon did not engage in or commit (and are not alleged to have engaged in or committed) any actions that "were in fact tortious or were undertaken in a personal capacity and not as agent of" DietGoal, as in *Machinery Corp. of America*, inequitable conduct, as in *Ohio Cellular*, or egregious personal misconduct, such as in *Applied Materials*, Domino's has not set forth any basis for adding them as parties to this litigation at this late stage. *See Ulead Systems v. Lex Computer & Management Corp.*, 151 F.

Supp. 2d 1192, 1208 (C.D. Cal. 2001) (declining to hold patent owner's sole shareholder, not named as a party to the underlying action, liable under § 285) (*rev'd on other grounds*, 351 F.3d 1139 (Fed. Cir. 2003)).

Domino's request "to take targeted discovery" is also untimely and should be denied. Motion at 20-21.  The Federal Rules of Civil Procedure afford no right to take what amounts to pre-complaint discovery to determine whether parties should be joined in a dispute.  From the inception of this litigation, Domino's has been fully aware of the involvement of Messrs. Mitry and Salmon in the litigation conducted by DietGoal.  Messrs. Mitry and Salmon have already been deposed in the DietGoal litigation, and Domino's relies on excerpts of that deposition testimony in its brief.  Domino's did not make any effort to take any further discovery of DietGoal or Messrs. Mitry and Salmon.  Domino's should not be permitted to now engage in a discovery fishing expedition to see if it can uncover any evidence to support its baseless claims against them.

### III.      CONCLUSION

Domino's arguments in support of its motion for attorneys' fees lack merit and are based on unsupported rhetoric about DietGoal's status as a "non-practicing entity."   Considering the totality of the circumstances, Domino's has failed to establish that this is an "exceptional case" warranting an award of attorneys' fees.  Accordingly, the Court should deny Domino's motion.

Dated:  January 28, 2015                Respectfully submitted,

                                        **MCNEELY, HARE & WAR LLP**


By:        */s/ Steven War*_____
           Steven War (VSB #45048)
           Steve@miplaw.com

           5335 Wisconsin Ave, N.W.
           Suite 440
           Washington, DC  20015
           Telephone:    (202) 536-5877
           Facsimile:    (202) 478-1813

**BUETHER JOE & CARPENTER, LLC**

           Christopher M. Joe
           *Appearing Pro Hac Vice*
           Chris.Joe@BJCIPLaw.com
           Eric W. Buether
           *Appearing Pro Hac Vice*
           Eric.Buether@BJCIPLaw.com
           Niky Bukovcan
           *Appearing Pro Hac Vice*
           Niky.Bukovcan@BJCIPLaw.com
           Michael D. Ricketts
           *Appearing Pro Hac Vice*
           Mickey.Ricketts@BJCIPLaw.com

           1700 Pacific Avenue
           Suite 4750
           Dallas, Texas 75201
           Telephone:    (214) 466-1271
           Facsimile:    (214) 635-1827

           **ATTORNEYS FOR PLAINTIFF
           DIETGOAL INNOVATIONS LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 28, 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven War*
Steven War